IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DAVID K. CASE,                              No. 2:24-cv-00533-HZ

                    Plaintiff(s),           OPINION & ORDER

        v.

JAMIE MILLER, CHRIS SHUPE, and
JOHN DOE,

                    Defendant(s).

David K. Case
SID # 13165853
Oregon State Penitentiary
2605 State Street
Salem, OR 97310-0505

        Plaintiff, *Pro Se*

Dan Rayfield
Attorney General
Carter Brace
Assistant Attorney General
Oregon Department of Justice
1162 Court Street N.E.
Salem, OR 97301

        Attorneys for Defendants

1 – OPINION & ORDER

HERNÁNDEZ, Senior District Judge:

This matter is before the Court on Defendants' Motion for Summary Judgment, ECF 21. For the following reasons Defendants' Motion is granted.

## BACKGROUND

At all relevant times Plaintiff David Case was an adult in custody ("AIC") at Snake River Correctional Institution ("SRCI"). On May 23, 2023, a correctional officer delivered to Plaintiff an "envelope of legal paperwork" that had been opened outside of Plaintiff's presence. Compl., ECF 2, Attachment 1, ¶ IV. A mailroom staff member had stamped the envelope: "NOT CONSIDERED A LEGAL ENTITY WITHOUT AN ATTORNEY'S NAME IN ACCORANCE WITH MAIL RULE 131." Compl., Ex. 1, at 1. The face of the envelope, however, included the statement "LEGAL MAIL Brittany Hill Bar #193763." *Id.*

On May 25, 2023, Plaintiff submitted a grievance regarding the incident; noted the materials were related to "a hearing before the Board of Parole and Post Prison Supervision later [that] year"; and requested "destruction of any copies made of" the contents of the envelope, "removal or retraining of" the "responsible mail processing center staff," and "compensation for damages and emotional distress." *Id*. at 4-5. On June 14, 2023, Defendant Chris Shupe, an administrative specialist in the mail processing center, examined the envelope and "deduced that it] was from an Attorney [and] marked Legal Mail." *Id*. at 6. On June 22, 2023, Shupe responded to Plaintiff's grievance and noted that SRCI

> does not make copies of Attorney/Court mail. . . . There are no copies to
> destroy. When Attorney/Court mail not marked Legal Mail is opened in
> the mailroom it is usually not reviewed, but inspected for contraband and
> such checks, paper clips, etc. The mailroom apologizes for your Legal
> Mail being opened outside your presence.

*Id*. Plaintiff filed grievance appeals on June 29, 2023, and September 15, 2023, both of which resulted in responses that noted the mail at issue was legal mail and that the mailroom apologized for the mistake.

On March 26, 2024, a correctional officer delivered to Plaintiff a letter from the Oregon Board of Parole that had been opened outside of Plaintiff's presence. The letter was stamped: "UNDER RULE 291-131-0010 NOT CONSIDERED LEGAL MAIL DOES NOT STATE 'LEGAL MAIL' ON FRONT OF ENVELOPE." Plaintiff did not file a grievance regarding this incident. Compl., Ex. 1, at 13.

On March 28, 2024, Plaintiff filed a *pro se* Complaint against Jamie Miller, Superintendent of SRCI; Chris Shupe; and John Doe, mail processing center staff, pursuant to 42 U.S.C. § 1983 alleging Defendants violated Plaintiff's First and Sixth Amendment rights when they opened the May 25, 2023 and March 26, 2024 letters outside of Plaintiff's presence. Defendants move for summary judgment.

## STANDARDS

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial responsibility of informing the court of the basis of its motion, and identifying those portions of "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting former Fed. R. Civ. P. 56(c)).

Once the moving party meets its initial burden of demonstrating the absence of a genuine issue of material fact, the burden then shifts to the nonmoving party to present "specific facts"

showing a "genuine issue for trial." *Fed. Trade Comm'n v. Stefanchik*, 559 F.3d 924, 927–28 (9th Cir. 2009) (internal quotation marks omitted). The nonmoving party must go beyond the pleadings and designate facts showing an issue for trial. *Bias v. Moynihan*, 508 F.3d 1212, 1218 (9th Cir. 2007) (citing *Celotex*, 477 U.S. at 324).

The substantive law governing a claim determines whether a fact is material. *Suever v. Connell*, 579 F.3d 1047, 1056 (9th Cir. 2009). The court draws inferences from the facts in the light most favorable to the nonmoving party. *Earl v. Nielsen Media Rsch., Inc.*, 658 F.3d 1108, 1112 (9th Cir. 2011). If the factual context makes the nonmoving party's claim as to the existence of a material issue of fact implausible, that party must come forward with more persuasive evidence to support its claim than would otherwise be necessary. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## DISCUSSION

Defendants move for summary judgment on the grounds of failure to exhaust administrative remedies as to the March 2024 letter, no personal involvement of Miller and Shupe, failure to establish a violation of the Sixth Amendment, failure to establish a violation of the First Amendment, and qualified immunity.

## I.    Failure to Exhaust

Defendants assert Plaintiff failed to exhaust his administrative remedies as to the March 2024 letter because he did not file a grievance regarding that incident.

### A.    Standards

The Prison Litigation Reform Act ("PLRA") provides "[n]o action shall be brought with respect to prison conditions under Section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such

administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The PLRA "mandates that an inmate exhaust . . . administrative remedies . . . before bringing suit to challenge prison conditions." *Ross v. Blake*, 578 U.S. 632, 635 (2016)(quotation omitted). "The prison's procedures govern whether a grievance contains the appropriate information to exhaust a claim." *Singleton v. Kernan*, 851 F. App'x 737, 738 (9th Cir. 2021)(citing *Jones v. Bock*, 549 U.S. 199, 218 (2007)).

The exhaustion requirement applies "to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). *See also Nettles v. Grounds*, 830 F.3d 922, 932 (9th Cir. 2016)(same). Courts "may not excuse a failure to exhaust, even to take [special] circumstances into account." *Ross*, 578 U.S. at 639. Moreover, AICs are obligated to navigate the prison's administrative review process "regardless of the fit between a prisoner's prayer for relief and the administrative remedies possible." *Booth*, 532 U.S. at 739-41. Accordingly, the Ninth Circuit has held "plaintiffs must pursue a remedy through a prison grievance process as long as *some* action can be ordered in response to the complaint." *Brown v. Valoff*, 422 F.3d 926, 934 (9th Cir. 2005)(emphasis in original). Even if the relief the AIC could receive is nothing more than "'corrective action taken in response to an inmate's grievance [that] . . . improve[s] prison administration and satisf[ies] the inmate,'" it is sufficient relief for an inmate to continue with the administrative process. *Id*. at 936 (quoting *Porter*, 534 U.S. at 525).

**B.    Oregon Department of Corrections ("ODOC") Grievance Procedure**

Oregon Administrative Rules provide that when AICs cannot resolve a dispute informally, they may file a formal grievance. OAR 291-109-0100(3)(a)-(b). An AIC "may not file more than one accepted grievance [ ] regarding a single incident or issue, regardless of

incident date, unless substantial new information is available about the incident or issue." OAR 291-109-0210(2). "Grievances must be received by the institution grievance coordinator or designee within 14 calendar days from the date of the incident or issue being grieved, unless the AIC can satisfactorily demonstrate why the grievance could not be timely filed." OAR 291-109-0205(1).

   After a grievance is accepted, staff provides a response to the AIC within 35 days, "unless further review is necessary[.]" OAR 291-109-0205(2). If the AIC is dissatisfied with the response to the submitted grievance, the AIC may appeal the denial in a two-level system of review. The first-level appeal "must be received by the institution grievance coordinator or designee within 14 calendar days from the date the initial grievance response was sent to the AIC unless the AIC can satisfactorily demonstrate why the [first-level] appeal could not be timely filed." OAR 291-109-0205(3). A response to the first-level appeal is sent to the AIC within 35 calendar days, "unless further review is necessary[.]" OAR 291-109-0205(4). If an AIC is dissatisfied with the response to the first-level grievance appeal, the AIC may submit a second-level appeal "within 14 calendar days from the date the [first-level] appeal response was sent to the AIC unless the AIC can satisfactorily demonstrate why the [second-level] appeal could not be timely filed." OAR 291-109-0205(5).

  **C.** **Analysis**

   Plaintiff did not file a grievance about the March 2024 letter. Plaintiff, therefore, did not exhaust ODOC's grievance procedure. Plaintiff asserts that he did not have to exhaust the March 2024 incident because it was part of a continuing violation.

   The Ninth Circuit has "applied the continuing-violations doctrine in the context of exhaustion of administrative remedies under the PLRA to treat events occurring after an inmate's

grievance as nonetheless exhausted when the later-occurring events are part of the single continuing harm or course of conduct that the inmate grieved." *Sheltra v. Christensen*, 124 F.4th 1195, 1201 (9th Cir. 2024)(citing *Morgan v. Trierweiler*, 67 F.4th 362, 369-70 (6th Cir. 2023)). Under that doctrine "a properly exhausted prison grievance asserting one, continuing harm or a single course of conduct can exhaust events arising out of the same alleged violation that occur after the grievance was made." *Id.* at 1203. The Ninth Circuit, however, noted that in *Morgan* the court distinguished the plaintiff's case, in which the continuing-violation doctrine applied, from a case involving the "denial of inmate mail where . . . the inmate had not claimed 'he had been denied mail consistently' but rather challenged 'certain pieces of mail rejected under different facts and policies.'" *Sheltra*, 124 F.4th at 1202 (quoting *Morgan,* 67 F.4th at 370 (citing *Siggers v. Campbell*, 652 F.3d 681 (6th Cir. 2011)). Under those circumstances the court declined to apply the continuing-violations doctrine. *Id.*

       The facts here are more similar to those circumstances that the Ninth Circuit has indicated would not constitute a continuing violation. Here Plaintiff alleges Defendant opened two pieces of legal mail in ten months. Plaintiff did not establish a continuing or consistent pattern of opening legal mail: one of the envelopes that was opened was clearly marked "legal mail" and included attorney information, the second envelope was not marked "legal mail" and was from a state agency. Thus, Plaintiff failed to establish that the two pieces of mail were opened under the same facts or policies. The Court, therefore, concludes the continuing violations doctrine does not apply and Plaintiff failed to exhaust his claims related to the March 2024 letter.

## II.    Personal Involvement

Defendants move for summary judgment on Plaintiff's claims against Defendants Miller and Shupe on the basis that Plaintiff has failed to establish these Defendants personally participated in the conduct underlying Plaintiff's claims.

Section 1983 liability "arises only upon a showing of personal participation by the defendant," acting under color of state law, that deprived the plaintiff of a constitutional or federal statutory right. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Supervisors are not vicariously liable for unconstitutional acts done by the individuals they oversee, but "they can be liable for their own conduct." *Peralta v. Dillard*, 744 F.3d 1076, 1085 (9th Cir. 2014)(en banc). A supervisor may be liable under Section 1983 only upon a showing of either (1) personal involvement in the constitutional deprivation or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation. *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011). "[G]overnment officials acting as supervisors only 'cause' a deprivation for which they were not physically present if the constitutional injury can be 'directly attributed' to the supervisor's wrongful conduct or 'training, supervision, or control of his subordinates.'" *Lyons v. Jackson*, No. 5:25-CV-01720-JAK-SSC, 2025 WL 2495549, at *4 (C.D. Cal. Aug. 29, 2025)(quoting *Starr*, 652 F.3d at 1205–06).

Plaintiff does not allege that Miller or Shupe were physically present when the mail at issue was opened. Rather, Plaintiff alleges Miller and Shupe may be held liable because they are the "governing authority hired to implement" the rules of the Mail Processing Center and they are "responsible for the hiring, training, and supervision" of Mail Processing Center Staff. Defendant Miller is the Superintendent of SRCI. Plaintiff provides no evidence or authority for his assertion that Miller is the governing authority hired to implement the rules of the mail center

or that he is responsible for the hiring, training, and supervision of mail center staff. Defendant Shupe is an administrative specialist in the mail processing center. Plaintiff points to no evidence of Shupe's job duties, authority, or responsibilities or evidence that Shupe is responsible for the hiring, training, or supervision of mail processing staff.

Plaintiff asserts Shupe and Miller responded to his grievance appeals for the May 2023 letter and, therefore, they can be held liable under § 1983 because they were on notice of potential constitutional violations but did nothing to correct them. The causal connection for supervisory liability under § 1983 can be established by "setting in motion a series of acts by others," or by "knowingly refusing to terminate a series of acts by others which the supervisor knew or reasonably should have known would cause others to inflict a constitutional injury[.]" *Starr*, 652 F.3d at 1207–08 (simplified). "The necessary fact, though, is that the supervisor knew about the violation or a risk of violation before the incident occurred or while it is ongoing. There is no supervisory liability under section 1983 for officials who learn of past constitutional violations." *Moore v. Thurnau*, No. 2:21-CV-00483-YY, 2024 WL 5340463, at *5 (D. Or. Oct. 3, 2024), report and recommendation adopted sub nom. *Moore v. Cain*, No. 2:21-CV-00483-YY, 2025 WL 239093 (D. Or. Jan. 17, 2025)(citing *Salas v. Nichols*, No. 4:17-cv-00663-JST, 2017 WL 2834061, at *9 (N.D. Cal. June 30, 2017)(dismissing claims against supervisory defendants who merely reviewed post-violation grievances because such evidence only established that the defendants were "on notice regarding alleged past constitutional violations, and not on notice regarding ongoing constitutional violations")). *See also Hayes v. ICC-CCA*, No. 1:12-CV-00351-BLW, 2018 WL 4208850, at *7 (D. Idaho Sept. 4, 2018), aff'd sub nom. *Hayes v. Idaho Corr. Ctr.*, 812 F. App'x 568 (9th Cir. 2020)(granting the defendants' motion for summary judgment on the basis that there was "no evidence from which a reasonable factfinder could conclude that

Defendant Burke directed her staff to open Plaintiff's legal mail or that she was aware of a problem with mailroom staff opening legal mail and yet failed to act to correct or prevent that problem). Plaintiff's evidence that Shupe and Miller responded to his grievances regarding his mail is not sufficient to establish that either of these defendants caused plaintiff's alleged constitutional injury. *See Green v. Link*, No. 2:19-cv-01324-JAM-KJN, 2019 WL 4033884, at *4 (E.D. Cal. Aug. 27, 2019)("[T]he act of writing a letter or otherwise notifying such officials after the alleged violation has taken place does not demonstrate such officials' involvement in the alleged violation.")).

Plaintiff has not established Miller or Shupe were personally involved in or caused the alleged deprivation of Plaintiff's rights. The Court, therefore, grants Defendant's Motion as to Miller and Shupe.

## III.    Sixth Amendment

Plaintiff alleges that Defendants violated his right to assistance of counsel under the Sixth Amendment when they opened the mail at issue. The Sixth Amendment guarantees the assistance of counsel in "all criminal prosecutions," but "does not govern civil cases." *Turner v. Rogers*, 564 U.S. 431, 441 (2011). *See also Wolff*, 418 U.S. at 576 (recognizing the Sixth Amendment's "reach is only to protect the attorney-client relationship from intrusion in the criminal setting"); *Mangiaracina v. Penzone,* 849 F.3d 1191 (holding the Sixth Amendment protects the right of an AIC to be present while legal mail relating to criminal proceedings is opened); *Evans v. Gower*, No. 2:17-cv-01162-MK, 2022 WL 3226968, at *10 (D. Or. Aug. 10, 2022)("All mail at issue is alleged to have been related to civil matters. As such, Defendants' motion [for summary judgment] is granted as to the Sixth Amendment claim).

The mail at issue here was related to a parole board proceeding for which there is no Sixth Amendment right to counsel. *See, e.g., West v. Williams*, No. CV 24-5199 DOC (AS), 2024 WL 5410446, at *3 (C.D. Cal. Nov. 18, 2024)("Plaintiff has not, and cannot, state a Sixth Amendment claim . . . since '[t]he Sixth Amendment does not apply to parole revocation proceedings[,]'")(quoting *United States v. Spangle*, 626 F.3d 488, 494 (9th Cir. 2010)). *See also Morrissey v. Brewer*, 408 U.S. 471, 480 (1972)("[T]he revocation of parole is not part of a criminal prosecution and thus the full panoply of rights due a defendant in such a proceeding does not apply to parole revocations."). Thus the Sixth Amendment does not apply here and the Court grants Defendants' Motion as to Plaintiff's claim for violation of the Sixth Amendment.

## IV.    First Amendment

Plaintiff alleges Defendants violated his First Amendment rights when they opened the May 2023 and March 2024 mail outside of his presence.

AICs "have a protected First Amendment interest in having properly marked legal mail opened only in their presence." *Hayes v. Idaho Corr. Ctr.*, 849 F.3d 1204, 1208 (9th Cir. 2017). "Legal mail means mail marked as being from a specified attorney." *Johnson v. Nevada Dep't of Corr.*, No. 2:20-CV-01914-APG-BNW, 2022 WL 17668041, at *3 (D. Nev. Dec. 12, 2022) (citing *Wolff v. McDonnell*, 418 U.S. 539, 576-77 (1974); *Hayes*, 849 F.3d at 1211). "Consequently, prison officials need not treat mail sent between prisoners and government agencies or officials as legal mail for constitutional purposes, and they may open and inspect such mail outside an inmate's presence." *Id.* (citing *Hayes*, 849 F.3d at 1211). *See also Keenan v. Hall*, 83 F.3d 1083, 1094 (9th Cir. 1996)("Mail from the courts, as contrasted to mail from a prisoner's lawyer, is not legal mail."). The March 2024 letter was not marked as legal mail and was from the Oregon Board of Parole, not an attorney. The Court concludes that the March 2024

letter was not legal mail and, therefore, the fact that it was opened outside of Plaintiff's presence does not implicate the First Amendment.

With respect to the May 2023 letter, it is undisputed that it is legal mail and that it was opened outside of Plaintiff's presence. "[E]ven a single instance of improper *reading* of a prisoner's [legal] mail can give rise of a constitutional violation." *Mangiaracina,* 849 F.3d at 1197 (emphasis added). "However, the *negligent* opening of an inmate's legal mail outside of the inmate's presence does not rise to the level of a constitutional violation and, therefore, does not violate § 1983." *Hayes,* 2018 WL 4208850, at *4  (emphasis in original)(citing *Stevenson v. Koskey,* 877 F.2d 1435, 1441 (9th Cir. 1989)("Stevenson has not shown, based on this record, that [defendant's] conduct concerning plaintiff's mail rose beyond the level of mere negligence.")). Moreover, "an isolated incident of . . . mail interference without evidence of improper motive does not violate [an AIC's] First Amendment rights." *Canales v. Macomber,* No. 3:23-cv-01059-GPC-MSB, 2023 WL 8790273, at *3 (S.D. Cal. Dec. 19, 2023)(collecting cases).

Plaintiff does not point to any evidence that the May 2023 letter was opened intentionally nor does he provide evidence of an improper motive. Rather, the evidence reflects the May 2023 letter was opened at most, negligently or with a lack of due care, which is insufficient to support a § 1983 claim for violation of the First Amendment. *See Evans v. Oregon,* No. 2:19-CV-00349-SU, 2020 WL 5507827, at *3 (D. Or. Mar. 25, 2020), report and recommendation adopted, No. 2:19-CV-00349-SU, 2020 WL 2200850 (D. Or. May 6, 2020)(citing *Wood v. Ostrander,* 879 F.2d 583, 587 (9th Cir. 1989)("'mere negligence' or the lack of due care cannot sustain a claim under § 1983")).

To the extent that Plaintiff intends his First Amendment claim to be one for right of access to the courts, "[t]o establish a violation of the right of access to the courts, a prisoner must establish that he or she has suffered an actual injury." *Nevada Dep't of Corr. v. Greene*, 648 F.3d 1014, 1018 (9th Cir. 2011)(citing *Lewis v. Casey*, 518 U.S. 343, 349 (1996)). "Actual injury is a jurisdictional requirement that flows from the standing doctrine and may not be waived." *Id.* "It is 'actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim.'" *Id.* (quoting *Lewis,* 518 U.S. at 348)(internal quotation marks omitted)). Plaintiff does not point to any evidence that the opening of the May 2023 letter outside of his presence caused him to fail to meet a filing deadline, present a claim, or suffer similar actual injury.

In addition, "[t]he right of access [to courts] is limited to complaints in direct criminal appeals, habeas petitions, and civil rights actions." *Bounds v. Byrnes*, No. 2:21-CV-00248-RMP, 2022 WL 291934, at *7 (E.D. Wash. Jan. 12, 2022)(citing *Lewis,* 518 U.S. at 354; *Simmons v. Sacramento Cty. Super. Ct.*, 318 F.3d 1156, 1159–60 (9th Cir. 2003)("a prisoner has no constitutional right of access to the courts to litigate an unrelated civil claim.")). This right "does not extend to parole consultation/suitability hearings." *Sherman v. Lizarraga*, No. 219CV-0569WBSKJNP, 2020 WL 731187, at *4 (E.D. Cal. Feb. 13, 2020), report and recommendation adopted, No. 219CV0569WBSKJNP, 2020 WL 1234427 (E.D. Cal. Mar. 13, 2020). The May 2023 letter related to proceedings before the Oregon Board of Parole and the right of access to courts does not extend to those matters.

In summary, the Court concludes that Plaintiff fails to establish a claim for violation of the First Amendment. The Court, therefore, grants Defendants' Motion as to this claim.

## V.    Dismissal with Prejudice

The Court has concluded that because Plaintiff did not file a grievance about the March 2024 letter, Plaintiff failed to exhaust ODOC's grievance procedure as to that letter. Typically, an unexhausted matter would be dismissed without prejudice. The Court, however, has also concluded that the March 2024 letter was not legal mail and involved parole board matters, therefore, its opening does not implicate the First or Sixth Amendment. Accordingly, the Court concludes that exhaustion would be futile and dismissal of this entire matter with prejudice is appropriate.

### CONCLUSION

The Court GRANTS Defendants' Motion for Summary Judgment, ECF 21.

IT IS SO ORDERED.

DATED:   September 24, 2025    .


MARCO A. HERNÁNDEZ
United States Senior District Judge